IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK10-80982-TJM |
| ) | A10-8035-TJM |
| ROBERT LEE PELSHAW, ) | |
| ) | CH. 7 |
| Debtor(s). ) | |
| PELSTAR DEVELOPMENT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ROBERT LEE PELSHAW, ) | |
| ) | |
| Defendant. ) | |

ORDER

Trial was held in Omaha, Nebraska, on December 4, 2012, regarding the complaint filed by Pelstar Development, LLC. Brian J. Koenig appeared for the plaintiff and David E. Pavel appeared for the defendant.

FINDINGS OF FACT

The defendant is a real estate developer who, with two other individuals, David Starostka, a building contractor, and Ed Sleder, an attorney, created Pelstar Development, LLC (Plaintiff) to construct and lease buildings used, generally, as major retail sites. Pelshaw operated through R.L. Pelshaw Co. in the development of the retail sites. He owned 50% of Pelstar Development, LLC, and Sleder and Starostka owned 25% each. Pelshaw was the manager of Pelstar Development, LLC.

Through R.L. Pelshaw Co., Pelshaw did brokerage oversight, acquisitions, leasing, management, government regulations, economic incentive negotiations, and project and client management for Plaintiff for a fee arrangement. Starostka was in charge of the construction phase through his construction company and was paid the usual fee for construction services which were rendered to Plaintiff. Sleder was in charge of the administrative and legal assets of the Plaintiff and was paid per project. R.L. Pelshaw Co. was paid a fee between $75,000 and $110,000 for its services to the individual projects.

In 2008, Sleder and Starostka discovered that Pelshaw had taken funds from the LLC for his own personal benefit without authority from the other members They demanded he repay the amounts and not repeat the unauthorized withdrawals. He agreed that he would not do it again. However, in 2009 they once again discovered he had taken unauthorized withdrawals. It was determined by use of a spreadsheet prepared by Pelshaw's bookkeeper that Pelshaw had used for his own benefit $121,497, with approximately $45,000 of that amount being for his personal use of a company airplane. The balance, $76,651.06, represented actual cash taken by Pelshaw without authority. The parties communicated about the matter and Pelshaw agreed to pay back the $76,651.06 and agreed to sign a promissory note for that amount. He did not, at that time, deny that the withdrawals were without authorization. Pelshaw promised to pay the balance, approximately

$45,000, to the company that managed the airplane use.

At trial Pelshaw claimed, inconsistent with the fact of the existence of the signed promissory note, that as manager he had sole authority to determine the use of the funds owned by Plaintiff. He testified that in taking the money, he was following normal and consistent practices of taking draws against each job and then, when the jobs were completed, reconciling the numbers to distribute funds to each of the members.

That particular practice was disputed by Sleder and Starostka and I find as a fact that the procedure suggested by Pelshaw was not actually the procedure followed in the operation of the business. Support for such finding comes from the testimony of Carlos Mendez, bookkeeper or administrative assistant for Pelshaw or the R.L. Pelshaw Co. There is evidence in the record in the form of an email dated in June of 2009 from Pelshaw to Mendez requesting that Mendez determine the amount that he personally owed to Plaintiff.

Furthermore, Mendez testified that there was nothing in the business records of Plaintiff showing any authorization for the withdrawal by Pelshaw of $76,651.06. Pelshaw took the money and told Mendez to treat the money as loans until reconciliation.

Starostka and Sleder both testified that they never authorized withdrawals for personal use. In addition, Starostka testified that the first time it was discovered that Pelshaw had withdrawn funds for personal use without authorization, they confronted him and he told them that he would not do it again. At that time he did not dispute that he had taken the money. Sleder testified that the note represented only funds that Pelshaw had withdrawn without authority. At the time he executed the note, Pelshaw did not dispute that he had taken the funds without authority.

I find the testimony of Starostka, Sleder and Mendez to be credible and the testimony of Pelshaw to be self-serving and inconsistent with the documentary evidence.

Finally, I find that Pelshaw, as manager of Plaintiff, owed a fiduciary duty to the other members to act for the benefit of the plaintiff and its members and not solely for his own benefit.

One of the defenses Pelshaw testified about is that the last project worked on by Plaintiff earned R.L. Pelshaw Co. approximately $47,000 which has not been paid by Plaintiff. He alleges in his testimony that such amount owed to R.L. Pelshaw Co. was assigned to him and that he can use it as a set-off against whatever he may owe to the plaintiff. There are two problems with such a position. First, there is no evidence in this record of any such assignment. Secondly, if there is a debt owed by Pelstar to R.L. Pelshaw Co. which has been assigned to Pelshaw, prosecution of that claim against Plaintiff is now under the authority of the Chapter 7 trustee. Defendant has no right to set off property of the bankruptcy estate against his personal debts.

## CONCLUSIONS OF LAW AND DISCUSSION

The Bankruptcy Code, at 11 U.S.C. § 523(a)(4), provides an exception from discharge of any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Plaintiff must establish by a preponderance of the evidence that a fiduciary relationship existed between the parties and that the Defendant committed a defalcation in the course of that fiduciary relationship. Jafarpour v. Shahrokhi (In re Shahrokhi), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

Defendant has admitted in his amended answer that he was acting in a fiduciary capacity as the manager of Plaintiff.

According to the caselaw in the Eighth Circuit, a bankruptcy court can find a "defalcation" under 11 U.S.C. § 523(a)(4) without evidence of bad faith, intentional fraud, or other intentional wrongdoing. The Eighth Circuit Court of Appeals has stated:

> Defalcation is defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." Under section 523(a)(4), defalcation "includes the innocent default of a fiduciary who fails to account fully for money received." . . . An individual may be liable for defalcation without having the intent to defraud.

Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane), 124 F.3d 978, 984 (8th Cir. 1997 (quoting Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir. 1996)). See also Hunter v. Philpott, 373 F.3d at 875 n.1 (defalcation is generally considered to be a failure to account for money or property that has been entrusted to one).

The Defendant, without authorization, took more than $76,000 from the funds owned by the Plaintiff and used the funds for his personal expenses. The members of the Plaintiff did not approve the withdrawal and there are no loan agreements, promissory notes, security agreements or other arrangements put in place between Defendant and Plaintiff at the time of the withdrawals. Only when he was confronted did he request his assistant to make a determination as to the amount that he had used. The promissory note represents the amount which Defendant agreed that he took without authorization and his action in taking such amount qualifies as an act of defalcation while acting in a fiduciary capacity and is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## AWARD OF INTEREST

> Whether an award of prejudgment interest is appropriate is generally determined as a discretionary factual issue. That is, for a party to recover prejudgment interest, the elements of the statutory action must be ascertainable and the defendant should lack a worthy defense. If these circumstances exist, a party may be entitled to prejudgment interest on recovery because the party has been unjustly deprived of the use of the funds.

Williams v. Kemp (In re Kemp), 242 B.R. 178, 182 (B.A.P. 8th Cir. 1999).

As represented by the effective date of the promissory note, May 1, 2008, it is clear that the parties agreed that the defendant began using funds of the plaintiff as of May 1, 2008. The promissory note provides for 10% rate of interest. Pre-judgment interest is allowed at the rate of 10% per annum, from May 1, 2008, through the date of the entry of this judgment of non-dischargeability. Post-judgment interest shall accrue beginning from the date of the entry of this judgment at the rate provided by 28 U.S.C. § 1961(a).

Separate judgment shall be entered.

DATED:     March 15, 2013

                    BY THE COURT:

                    /s/ Timothy J. Mahoney
                    United States Bankruptcy Judge

Notice given by the Court to:
    *Brian J. Koenig
    David E. Pavel
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.